Rosen, J., concurring:
I concur in the result because I think the error in allowing Harris to testify was harmless. However, I disagree with the majority's conclusion that K.S.A. 22-3201(g) permitted the State to endorse Harris on the day of trial. By its plain language, K.S.A. 22-3201(g) clearly requires that the State endorse all "known witnesses" when it files the complaint and limits any later endorsements to those witness who "may afterward become known to the prosecuting attorney." (Emphasis added.) In light of this clear expression of legislative intent, I cannot agree with the majority's interpretation of the statute. I would hold that if the State wishes to endorse a witness after it has filed its complaint, then the State has a duty to show that it was unaware of the witness at the time of *1044 filing. Because the State did not prove it was unaware of Harris when it filed its first complaint, I would conclude the district court erred in allowing the State to endorse Harris on the day of trial.
The majority relies heavily on stare decisis to affirm this court's unwavering interpretation of the statute. While I appreciate the important role of this doctrine in our decisions, I do not believe it has a part to play in this case. The language of the statute makes clear that the long-standing interpretation is incorrect. And, although the majority is not persuaded by Brosseit's arguments, he has presented a convincing reason why departing from our current precedent would do more good than harm. Brosseit aptly points out that requiring a criminal defendant to request a continuance in order to show reversible error on appeal may force a choice between a fair trial and a speedy trial. Surely, we should consider good any action that alleviates the requirement that a defendant give up one constitutional right as a prerequisite to accessing another.
Ultimately, however, I agree with the result in this case because I conclude that Harris' testimony was harmless. The State likely provided sufficient evidence apart from Harris' testimony to establish the foundational requirements needed to admit the blood sample. Early testified that an EMS technician took the sample and signed the toxicology request after doing so. The toxicology request included a signature where "medical personnel" are instructed to confirm that they have drawn the blood.
Even if the evidence did not suffice to meet foundational requirements, there is no reasonable probability that the jury would have found Brosseit not guilty of DUI under the theory that did not require the blood sample-driving under the influence while incapable of safely driving a vehicle. Early provided the following testimony to support that theory: that Brosseit swerved out of his lane and that there was nothing in the lane that would have caused him to do so; that when he pulled Brosseit over, Brosseit had bloodshot and watery eyes and slurred his speech and that there was an odor of alcohol; that Brosseit stumbled after he got out of the car and did not accurately recite the alphabet; and that based on his training and observations, Brosseit was under the influence of alcohol. Additionally, the State introduced evidence of open containers in Brosseit's car and video that showed Brosseit driving and swerving out of his lane and failing to accurately recite the alphabet. Based on the presence of all of this evidence, I would conclude there was no reasonable probability that the absence of the blood test results would have changed the jury's conclusion that Brosseit was guilty of DUI.
Johnson and Stegall, JJ., join the foregoing concurring opinion.